OPINION
{¶ 1} The appellant, Raymond Miles, appeals the July 26, 2002 judgment of conviction and sentencing of the Common Pleas Court of Defiance County, Ohio.
 {¶ 2} The facts relevant to this appeal are as follows. On June 20, 2001, Vicky Perez was taken to the Defiance Hospital, having overdosed on cocaine. Officers were dispatched to the hospital to investigate this matter. Their investigation soon led to Perez's home, which she shared with Scott Sargent at the time of her overdose. Upon searching the home, the officers discovered drug paraphernalia, and Sargent informed officers that Miles was their crack cocaine supplier. Sargent later agreed to cooperate with law enforcement in a controlled buy from Miles.
 {¶ 3} On July 2, 2001, the police conducted the controlled buy with Sargent. On that date, Sargent called Miles and stated that he wanted "three cartons," which signified to Miles that he wanted $300 worth of crack cocaine. The money, which was first photocopied by police, was left on Sargent's kitchen countertop. Miles then made his delivery, left Sargent's home, and was stopped in his car by police shortly thereafter. The $300 supplied by the police was found on Miles' person and police recovered 1.06 grams of cocaine from Sargent's kitchen counter. Eventually, Sargent revealed to the police that Miles had sold crack to him throughout April, May, and June of 2001.
 {¶ 4} As a result of this investigation, Miles was indicted for seven counts of trafficking in drugs, specifically one to five grams of crack cocaine, a violation of R.C. 2925.03(A)(1), on December 6, 2001. The case proceeded to a two-day jury trial on June 6-7, 2002. At the close of the State's presentation of evidence, counsel for Miles made a Criminal Rule 29 motion for acquittal, which was overruled by the court. This motion was then renewed at the close of all the evidence and was likewise overruled. Subsequently, the jury returned verdicts of guilty on all seven counts of the indictment. A sentencing hearing was then held on July 22, 2002, and Miles was sentenced to a term of seventeen months of imprisonment as to Count 7 of the indictment, and seven months on each of the remaining six counts of the indictment. In addition, the trial court ordered these sentences to be served consecutively for an aggregate total of fifty-nine (59) months. This appeal followed, and Miles now asserts three assignments of error. The trial court erred in denying defendant'smotion for directed verdict after the close of the state's presentationof evidence because the state did not establish a prima facie case as tocounts 1-6. The trial court erred in denying defendant's motion fordirected verdict at the end of the presentation of evidence because thestate failed to establish proof of the crimes alleged in counts 1-6. Thetrial court erred in accepting jury verdicts of "guilty" in counts 1-6,which verdicts were not supported by the evidence.
 First and Second Assignments of Error {¶ 5} In his first two assignments of error, Miles asserts that the trial court erred in denying his motion for acquittal on Counts 1-6 made after the close of the State's case-in-chief and renewed after the close of all the evidence. Rule 29(A) of the Rules of Criminal Procedure states that "[t]he court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged * * * if the evidence is insufficient to sustain a conviction of such offense[.]" Accordingly, "a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt." State v. Bridgeman (1978),55 Ohio St.2d 261, syllabus; see, also, State v. Boddie, Allen App. No. 1-2000-72, 2001-Ohio-2261, 2001 WL 1023107. However, as this Court has previously held, the Bridgeman standard "must be viewed in light of the sufficiency of evidence test[.]" State v. Foster (Sept. 17, 1997), Seneca App. No. 13-97-09, 1997 WL 576353, citing State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus. In Jenks, the Ohio Supreme Court set forth the sufficiency of the evidence test as follows:An appellate court's function when reviewing the sufficiency of theevidence to support a criminal conviction is to examine the evidenceadmitted at trial to determine whether such evidence, if believed, wouldconvince the average mind of the defendant's guilt beyond a reasonabledoubt. The relevant inquiry is whether, after viewing the evidence in alight most favorable to the prosecution, any rational trier of fact couldhave found the essential elements of the crime proven beyond a reasonabledoubt. Jenks, supra.
 {¶ 6} Miles was charged with seven counts of trafficking in drugs, six of which he now challenges. The relevant statutory section states: "(A) No person shall knowingly do any of the following: (1) Sell or offer to sell a controlled substance[.]" R.C. 2925.03(A)(1). The specific controlled substance that the State sought to prove was sold or offered for sale by Miles was crack cocaine in an amount between one to five grams, a fourth degree felony with a presumption for a prison term in accordance with R.C. 2925.03(C)(4)(c).
 {¶ 7} The first contention made by Miles is that the evidence at trial did not establish that he "offered" to sell crack cocaine to another because Sargent made a request to buy crack cocaine from Miles rather than Miles offering to sell it to him. Thus, Miles maintains that the State had to provide sufficient evidence that he sold crack cocaine in the amount specified to Sargent and Perez. However, Miles contends that the evidence did not establish the identity or quantity of drug allegedly sold by him.
 {¶ 8} Our review of the record reveals the following. Sargent testified as to the method employed when he wanted to buy crack from Miles. Sargent would call Miles and make a request for crack by referring to it as it were cigarettes. For instance, Sargent testified that he would inform Miles that he needed "three cartons," which would signify to Miles that he wanted $300 worth of crack. Sargent would then leave the money for the drugs on the kitchen counter, and Miles would take the money from the counter and leave the requested drugs on the counter. This testimony was corroborated by Perez's testimony.
 {¶ 9} In addition, Sargent testified that the amount purchased on July 2, 2001, for $300 was similar to the amounts he purchased at other times from Miles between April and June of 2001. Perez likewise testified that the substance purchased on that day was similar in size to the amounts purchased from Miles between April and June of 2001, and that she and Sargent would sometimes buy much larger quantities from Miles during this time frame. The undisputed lab analysis of the substance sold to Sargent by Miles on July 2, 2001, revealed that the substance was 1.06 grams of crack cocaine. Deputy David Blosser of the Defiance County Sheriff's Department, an eight-year veteran of the Multi-Area Narcotics Task Force in July 2001, further testified that $300 would buy a person two to three grams of crack, which generally sells for $100 a gram, but that buyers are sometimes shorted a little as part of the nature of the drug business.
 {¶ 10} The State also presented Sargent's bank records for April, May, and June of 2001. These records showed both cash withdrawals for $200-$250 at various times and checks drawn for amounts between $1,000 to $3,000. Sargent testified that he drafted these checks as payable either to himself or cash and that all of this money in these amounts was used to purchase crack from Miles during this same time period. Sargent also testified that he was spending $500-$750 per day on average for crack cocaine. This testimony by Sargent was also corroborated by Perez. Further, Perez testified that she was using crack cocaine during this same time and that she was an addict with an every day habit of using crack. Perez also testified that Sargent paid Miles for the crack she consumed and that he was using it with her. In addition, Perez said that she became high from the substances purchased from Miles and that based upon her experience with crack and how it affected her, the substances purchased at various times between April and June of 2001, from Miles was crack cocaine.
 {¶ 11} Despite this testimony, Miles maintains that there was no evidence as to the nature or amount of the substances alleged in Counts 1-6 because the State failed to provide either a laboratory analysis or expert testimony to prove the identity and quantity of the drugs sold. Miles correctly notes that a laboratory analysis was not conducted and expert testimony was not provided. The State contends that it could not provide either of these things because the substance sold by Miles on these dates was smoked in its entirety by Perez and/or Sargent. However, the State maintains that Perez's testimony, corroborated in part by Sargent's testimony and his bank records, was sufficient to establish that the substances at issue in Counts 1-6 were crack cocaine.
 {¶ 12} The Ohio Supreme Court recently held "that the experience and knowledge of a drug user lay witness can establish his or her competence to express an opinion on the identity of a controlled substance if a foundation for this testimony is first established." Statev. McKee (2001), 91 Ohio St.3d 292, 297. In McKee, the Court found that the testimony of two young girls who provided no testimony as to their experience with marijuana, the effects that the substance in issue had on them at the time they smoked it, or as to how they reached their conclusion that the substance they smoked was marijuana was inadmissible because there was no foundation for its admission. Id. at 297-298.
 {¶ 13} As previously discussed, the case sub judice is notably distinguishable from McKee. Here, an admitted crack addict testified that Miles supplied her crack on numerous occasions from April-June 2001, that she became high after using the crack supplied to her by Miles, and that based upon her extensive experience with crack and how it affected her, it was her opinion that the substance purchased from Miles throughout this time period was crack cocaine. In addition, Perez testified that what she and Sargent purchased from Miles throughout this time frame looked substantially similar to the substance purchased in the controlled buy from Miles on July 2, 2001, which was identified through laboratory analysis as 1.06 grams of crack cocaine. Given Perez's testimony and the remainder of the evidence provided, the State presented sufficient evidence that reasonable minds could have reached different conclusions as to whether the requisite amount of one to five grams and whether the substances sold by Miles were crack cocaine were proven beyond a reasonable doubt.
 {¶ 14} Our inquiry does not end here, however. Miles further asserts that the State failed to show that he sold crack cocaine on the dates alleged in Counts 1-6 of the indictment. The Ohio Supreme Court has previously held that "[i]n a criminal charge the exact date and time are immaterial unless in the nature of the offense exactness of time is essential. It is sufficient to prove the alleged offense at or about the time charged." Tesca v. State (1923), 108 Ohio St. 287, syllabus. In addition, the General Assembly has recognized the immateriality of the exactness of date and time by requiring that an indictment need only make apparent "[t]hat the offense was committed at some time prior to the time of finding of the indictment[.]" R.C. 2941.03(E). In fact, the General Assembly has determined that "[a]n indictment or information is not made invalid * * * [f]or stating the time imperfectly" or for failing to state the time at all "in a case in which time is not of the essence of the offense[.]" R.C. 2941.08(B), (C). Thus, "[a] certain degree of inexactitude of averments, where they relate to matters other than elements of the offense, is not per se impermissible or necessarily fatal to a prosecution." State v. Sellards (1985), 17 Ohio St.3d 169, 171.
 {¶ 15} "If such is not fatal to an indictment, it follows that impreciseness and inexactitude of the evidence at trial is not `per se
impermissible or necessarily fatal to a prosecution.'" State v. Barnecut
(1988), 44 Ohio App.3d 149, 141, quoting State v. Robinette (Feb. 27, 1987), Morrow App. No. CA-652, 1987 WL 7153. In addition, this Court has previously held that "this rule [is not] altered by the presentation of an alibi defense." In the Matter of French (Oct. 5, 1988), Marion App. No. 9-86-26, 1988 WL 106177. Rather, "[t]he question in such cases is whether the inexactitude of temporal information truly prejudices the accused's ability fairly to defend himself." Barnecut, supra, citing Sellards,supra; State v. Gingell (1982), 7 Ohio App.3d 364, 368; State v. Kinney
(1987), 35 Ohio App.3d 84.
 {¶ 16} Time is not an essential element of the offense of trafficking in crack cocaine. Although the witnesses presented by the State did not provide the exact dates of the crack sales, their testimony established that the sales occurred throughout April, May, and June of 2001. In addition, the inexactitude of time did not truly prejudice Miles' ability fairly to defend himself, as Miles was able to provide witnesses to account for his whereabouts around some of these dates. Moreover, the State presented Sargent's bank records, which show dates and amounts of various withdrawals, as well as Sargent's testimony that these various amounts reflected drug purchases.
 {¶ 17} The first two counts of the indictment reflect dates "on or about" May 24, 2001, and May 25, 2001, respectively. Sargent's bank statements showed a check for $3,000 was cashed on May 24, 2001, and a check for $2,000 was cashed the following day. In addition, the records showed ATM withdrawals of over $300 on May 24, 2001, and $250 on May 25, 2001, all of which Sargent testified was used to purchase crack from Miles. The third count alleges that Miles engaged in drug trafficking "on or about" May 29, 2001. Sargent's bank records indicated that over $900 was withdrawn via an ATM on that date, which Sargent testified was used to purchase crack from Miles. The fourth and fifth counts indicate dates of "on or about" June 18, 2001, and June 19, 2001, respectively. Once again, a check for $3,000 was cashed on June 18, 2001, and a check for $2,500 was cashed the following day, both of which Sargent indicated were used to purchase crack from Miles. In addition, the State presented evidence that Perez suffered from an overdose of crack on June 20, 2001. Finally, the sixth count alleges a date of "on or about" June 21, 2001. Perez admitted to using crack cocaine even shortly after her overdose on June 20, 2001. Further, Sargent's bank records reflect large cash withdrawals only a few days earlier and a cashed check for over $300 on June 21, 2001.
 {¶ 18} Furthermore, both Perez and Sargent testified that Sargent spent over $80,000 on crack cocaine from April-June 2002, for the two of them and that he purchased this crack from Miles. Given all of this information, we find the evidence in this case was sufficient to establish the occurrence of these offenses "on or about" the dates as alleged in the indictment. Accordingly, the first and second assignments of error are overruled.
 Third Assignment of Error {¶ 19} In his third assignment of error, Miles maintains that his convictions for Counts 1-6 were based on insufficient evidence. As noted earlier, An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jenks, 61 Ohio St.3d at paragraph two of the syllabus. Miles bases his argument on the same reasons as to why he asserts his Rule 29 motions should have been granted. Given our discussion as to the first and second assignments of error, we conclude that when construing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found the essential elements of trafficking in drugs proven beyond a reasonable doubt. Therefore, the third assignment of error is overruled.
 {¶ 20} For these reasons, the judgment of the Common Pleas Court of Defiance County, Ohio, is affirmed.
Judgment affirmed.
BRYANT, P.J., and CUPP, J., concur.